IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| AARON BRANDON GRAVES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:18-cv-00177-O |
| | § | |
| ANDREW M. SAUL,[1] | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Aaron Brandon Graves ("Graves") filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act ("SSA"). ECF Nos. 1, 14. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**I.   STATEMENT OF THE CASE**

Graves was born on August 8, 1972 and completed a high school education. ECF No. 14 at 4. On the alleged disability onset date, he was a younger individual (between the ages of 18 and 49). Tr. 30. He filed for DIB on February 2, 2016 and filed for SSI on November 19, 2015. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 12-1 at 19. He alleges that his disability began on

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

January 1, 2012. *Id.* The Commissioner initially denied his claims on June 13, 2016 and denied them again upon reconsideration on September 30, 2016. *Id.* Graves requested a hearing, which was held before Administrative Law Judge ("ALJ") J. Dell Gordon on November 2, 2017 via video. *Id.* The ALJ issued an unfavorable decision on December 11, 2017, finding that based on the applications for DIB and SSI, Graves was not disabled. *Id.* at 32.

The ALJ employed the statutory five-step analysis and established during step one that Graves had not engaged in substantial gainful activity since January 1, 2012, the alleged disability onset date. *Id.* at 21. At step two, the ALJ determined that Graves had the severe impairments of affective mood disorder, other and unspecified arthropathies, obesity, personality disorder, bipolar disorder, alcohol use disorder, cannabis use disorder in remission, and methamphetamine use disorder. *Id.* At step three, the ALJ found that Graves's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 22. He found that Graves had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and no limitations in adapting or managing himself. *Id.* at 23–24. At step four, the ALJ found that Graves was unable to perform his past relevant work as a painter and a construction remodeler. *Id.* at 30. At step five, the ALJ found that jobs that Graves could perform existed in significant numbers in the national economy, so a finding of "not disabled" was appropriate. *Id.* at 31.

The Appeals Council denied review on March 9, 2018, and again on May 24, 2018. *Id.* at 3, 9. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. STANDARD OF REVIEW

Title II, 42 U.S.C. §§ 404 *et seq.* of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Part 404 (2019). The SSA defines a disability, in relevant part, as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1) (2019).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520 (2019). First, if a claimant is engaged in any substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b) (2019). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b) (2019)). Second, to be disabled, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c) (2019). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d) (2019). Fourth, if the claimant's medical status alone does not constitute a disability, he can qualify for disability benefits if his impairments prevent him from returning to his past relevant work. 20 C.F.R. § 404.1520(f) (2019). At this step, the ALJ considers the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.945(a)(1) (2019). Fifth, even if the claimant cannot perform his past relevant work, a finding of disability is only appropriate if his impairments prevent him from making an adjustment to other work after considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g) (2019).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted).

### III. ANALYSIS

Graves raises three issues on appeal. He claims that the ALJ (1) failed to properly consider all of Graves's severe impairments in determining his RFC, (2) failed to properly set forth all of Graves's functional limitations and adequately describe them to the vocational expert ("VE"), and (3) erred in finding that Graves was capable of performing other jobs that exist in significant numbers in the national economy. ECF No. 14 at 2–3.

  **A.** **The ALJ used the correct severity standard and properly considered all of Graves's severe impairments when determining his RFC.**

Graves alleges that the ALJ applied an improper legal standard to evaluate his severe impairments. ECF No. 14 at 4. He argues that defining a non-severe impairment as one that has "no more than a minimal effect on an individual's ability to work" is inconsistent with Fifth Circuit precedent. *Id.* at 4–5. The Commissioner contends that the ALJ cited an opinion "of the same effect" as *Stone*, meeting the Fifth Circuit's requirements for presenting the severity standard. ECF No. 15 at 3. The Commissioner also contends that substantial evidence supports the ALJ's step two determination. *Id.* Though the ALJ did not use the exact language set forth in *Stone*, the undersigned finds, for the reasons that follow, that the ALJ applied the correct severity standard.

At step two of the sequential analysis, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii) (2019). To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)(ii), (c)). To evaluate whether a claimant's medical condition qualifies as a "severe impairment," the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2019). The Fifth Circuit has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1102–05. Instead, the Fifth Circuit established in *Stone* that an impairment is not severe only when it is a "slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (internal punctuation and quotation marks omitted).

To prevent the regulatory standard for severity from limiting a claimant's rights, the Fifth Circuit held in *Stone* that it would "assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106. Nevertheless, a case will not be remanded simply because the ALJ did not use the "magic words[,]" but only when there is no indication that the ALJ applied the correct standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

Here, the ALJ did not cite to *Stone* or apply the *Stone* standard in his decision. *See* Tr. 19–32. Instead, he stated the severity standard as follows:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922; Social Security Rulings (SSRs) 85-28 and 16-3p).

Tr. 20. The *Stone* severity standard does not allow for any interference with work ability, not even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009).

In the Fifth Circuit, an ALJ's failure to cite to *Stone* does not mandate automatic reversal and remand. *Gibbons v. Colvin*, No. 3:12-cv-00427-BH, 2013 WL 1293902, at *14 (N.D. Tex. Mar. 30, 2013). Instead, application of a harmless error analysis is appropriate where the ALJ proceeds past step two and considers the impairments in the subsequent stages of the sequential evaluation process. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam) (applying harmless error analysis where the ALJ failed to cite *Stone* at step two, but proceeded to steps four and five of the sequential evaluation process); *see also Garcia v. Astrue*, Civil No. M-08-264, 2012

WL 13716, at *13 (S.D. Tex. Jan. 3, 2012) (noting that the Fifth Circuit "has consistently held that an ALJ's failure to assess the severity of a claimant's impairments at step two is not a basis for remand where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, retained the residual functional capacity to do other work.") (citations and punctuation omitted). Therefore, to prevail on his objection, Graves must show that the ALJ's *Stone* error in step two was not harmless. *See Graves*, 837 F.3d at 593. Harmless error exists when "it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citation omitted).

Graves argues that it is irrelevant that the ALJ proceeded past step two. ECF No. 14 at 6. He points out that "[t]he Fifth Circuit has never held that *Stone* only applies to cases where a Plaintiff is found not disabled at step two." *Id.* (quoting *Lawson v. Astrue*, No. 4:11-cv-00426, 2013 WL 449298, at *3 (E.D. Tex. 2013)). However, the Commissioner's argument here is not that *Stone* does not apply. Rather, the Commissioner argues that the *Stone* standard is not inconsistent with the standard the ALJ applied, but even if it were, the error would be harmless. ECF No. 15 at 3–5. The undersigned finds that any error that the ALJ made in applying an incorrect severity standard was harmless because the ALJ did not reject Graves's claims at step two. The undersigned also finds that the ALJ's determination that Graves's carpal tunnel syndrome and diabetes mellitus were not severe was supported by substantial evidence in the record.

> 1. *The ALJ properly found that Graves's carpal tunnel syndrome was not severe.*

The ALJ properly considered the evidence related to Graves's carpal tunnel syndrome. On January 16, 2014, Graves saw Dr. Virgil G. Frando for a physical examination. Tr. 459. Dr. Frando noted that Graves had "good strength of grip, reach, pinch, and grasp;" good range of motion of the shoulder, elbow, wrist joint, and fingers; and he could make a fist with both hands. *Id.* at 460.

On September 28, 2016, Dr. Leigh McCary rated Graves's handling and fingering abilities as limited and noted that he should limit handling and fingering to frequent—rather than constant—use. *Id.* at 105; ECF No. 15 at 5. The ALJ considered this evidence, but decided that "the record does not support handling and fingering restrictions in light of the claimant's demonstrated normal grip strength and normal range of motion of his fingers and wrists." Tr. 28. Graves argues that "normal grip strength may have nothing to do with numbness" because "while, on an isolated basis, the Plaintiff may have normal grip, numbness may prevent him from either maintaining his grip or repeating his grip." ECF No. 16 at 5. Graves does not cite any authority or medical evidence to support this claim, however.

Based on the evidence and the ALJ's analysis, it is inconceivable that the ALJ would have reached a different conclusion—a conclusion in which he found that Graves's carpal tunnel syndrome was severe—if he had applied the *Stone* standard rather than the standard that he applied. Therefore, the ALJ's error in failing to apply the *Stone* severity standard while analyzing Graves's carpal tunnel syndrome was harmless.

2. *The ALJ properly found that Graves's diabetes mellitus was not severe.*

The previous analysis also applies to the ALJ's consideration of Graves's diabetes mellitus. The plaintiff has the burden of showing that any *Stone* error in step two was not harmless. On June 8, 2012, Dr. Eugene Pak examined Graves and noted mild radiculopathy and mild sensory axonal polyneuropathy. Tr. 405–06. On January 16, 2014, Dr. Virgil Frando examined Graves and noted a diagnosis of "diabetes mellitus with diabetic neuropathy." *Id.* at 459, 461. He stated that Graves had a sensory deficit in his upper extremity, likely caused by his diabetic neuropathy rather than his carpal tunnel syndrome. *Id.* at 461. However, Dr. Frando also noted that Graves had "[n]o sensory deficit to pinprick and light touch in lower extremity" and was able to tandem walk, walk on his heels and toes, stand on alternating legs with good balance, and squat without difficulty

getting up. *Id.* at 461. On June 24, 2015, Carol Davidson, RN/FNP, noted that Graves worked in construction, so he often knelt or squatted. *Id.* at 486–87.

Although Graves argues that other evidence in the record supports his assertion that his diabetes mellitus is severe, his "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-cv-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *report and recommendation adopted,* No. 4:15-cv-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016); *see, e.g.*, ECF No. 14 at 6–7. Graves's disagreement with the ALJ's severity finding does not carry his burden of establishing that no substantial evidence supports the ALJ's determination.

The ALJ's opinion shows that he complied with 20 C.F.R. § 404.1545(a)(2) in considering all of Graves's impairments, and under both severity standards, substantial evidence supports his findings that Graves's carpal tunnel syndrome and diabetes mellitus were not severe. Based on the evidence and the ALJ's analysis, it is inconceivable that the ALJ would have reached a different conclusion—a conclusion in which he found that Graves's diabetes mellitus syndrome was severe—if he had applied the *Stone* standard rather than the standard that he applied. The undersigned finds that any error that the ALJ made in applying the severity standard was harmless, so the undersigned cannot find that the ALJ erred in his step two determination.

    **B.    The ALJ properly set forth all of Graves's functional limitations and adequately described them to the VE.**

        *1.    The ALJ did not fail to incorporate Graves's psychiatric limitations into the RFC assessment.*

Graves argues that the ALJ erred in failing to incorporate his psychiatric limitations into the RFC assessment. ECF No. 14 at 7–8. Specifically, he argues that the ALJ did not incorporate his moderate limitation in interacting with others. *Id.* Graves also argues that the ALJ's analysis of the paragraph B limitations was inconsistent with the medical evidence and points out evidence

9

contrary to the ALJ's finding that Graves had only mild limitations in understanding, remembering, or applying information and no limitations in adapting or managing himself. *Id.* at 7–8 n.1. In response, the Commissioner argues that the ALJ did not need to explicitly tie each severe impairment to a limitation in the RFC assessment. ECF No. 15 at 7.

> When assessing mental impairments, the
> 
> [ALJ's] written decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4) (2019). The functional areas described in paragraph (c) are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3) (2019).

Graves objects to the ALJ's finding that he had a moderate limitation in interacting with others because the only reference to social interaction in the RFC assessment was that Graves "can interact appropriately with coworkers and supervisors." ECF No. 14 at 8 (internal quotation marks omitted) (quoting Tr. 24). However, the written decision clearly shows that the ALJ considered the evidence regarding Graves's ability to interact with others. *See* Tr. 23–24. The ALJ noted that Graves alleged difficulty engaging in social activities and getting along with others, but he was able to shop, spend time with friends and family, live with others, and maintain a romantic relationship. *Id.* at 23. The decision also included examination and laboratory findings, the functional impairments the ALJ considered in reaching the conclusion about the severity of Graves's mental impairment, and specific findings as to the degree of limitation in each of the functional areas. *See id.* at 23–24, 26. Therefore, the ALJ did not fail to incorporate Graves's psychiatric limitations into the RFC assessment.

Additionally, Graves argues that other evidence in the record supports his assertion that the ALJ improperly assessed his mental limitations. ECF No. 14 at 7–8 n.1. However, as noted above, his "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell*, 2016 WL 3621097, at *3. Despite Graves's disagreement with the ALJ's finding regarding his mental limitations, substantial evidence supports the ALJ's determination.

2. *The ALJ adequately described Graves's functional limitations to the VE.*

Graves argues that the ALJ's finding that Graves "can carry out simple tasks, but only with supervision" is deficient because it is vague. ECF No. 14 at 8 (internal quotation marks omitted) (quoting Tr. 24). He asserts that the VE, Julie Harvey, did not know what the ALJ meant by "with supervision," so her response is "not substantial evidence sufficient to support the ALJ's ultimate conclusion." ECF No. 14 at 8–9; Tr. 42. He further asserts that "the burden of failing to define terms should rest upon the drafting party." ECF No. 16 at 6. In response, the Commissioner argues that because Graves's attorney did not question the VE about the limitation of work "only with supervision," Graves waived any objection to the definition of this phrase. ECF No. 15 at 9.

This Court has noted:

> When an ALJ bases a determination of non-disability on the testimony of a [VE] in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:
> 1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
> 2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

11

*Detwiler v. Astrue,* No. 5:10-cv-00194-BG, 2012 WL 569188, at *4–5 (N.D. Tex. Jan. 19, 2012), *report and recommendation adopted,* No. 5:10-cv-00194-C-BG, 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (internal citation omitted). Neither of the above requirements is present here.

First, the undersigned finds that the hypothetical question reasonably incorporated all of Graves's disabilities and impairments recognized by the ALJ. In the ALJ's written opinion, he recognized Graves's severe impairments of affective mood disorder, other and unspecified arthropathies, obesity, personality disorder, bipolar disorder, alcohol use disorder, cannabis use disorder in remission, and methamphetamine use disorder. Tr. 21. He found that Graves

> [had] the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can sit for a total of up to six hours in an eight hour workday; can stand and/or walk for a total of up to four hours in an eight hour workday; can occasionally crouch, kneel, crawl, and stoop; can occasionally climb ramps, stairs, and ladders; can frequently balance; can carry out simple tasks, but only with supervision; and can interact appropriately with coworkers and supervisors.

*Id.* at 24. The ALJ incorporated all these impairments when he asked the VE the following hypothetical question:

> Consider for me a male Claimant, 45 years of age, 12th grade education, capable of light work, as defined by the Social Security Regulations. Can sit for a total of up to six hours in a day, can stand and/or walk for—not to exceed four hours in a day total, can only occasionally crouch, or kneel, or use—or crawl, or stoop, or use ramps, or stairs, or ladders, can frequently bounce [sic], can carry out simple tasks, but only with supervision, can interact appropriately with co-workers and supervisors. Could such a person perform any of Claimant's past work?

*Id.* at 70. As discussed above, the RFC was based upon substantial evidence, including Graves's symptoms and the extent to which those symptoms reasonably could be accepted as consistent with the objective medical evidence and other evidence of record. *See, e.g., id.* at 459, 461. Accordingly, the undersigned finds that the ALJ sufficiently incorporated all disabilities and impairments he recognized in his hypothetical question to the VE. As a result, the ALJ's hypothetical question was not materially vague or misleading. Because there is not a "significant

12

discrepancy . . . between the limitations included in the hypothetical question posited to the VE and the limitations the ALJ found in his decision," the undersigned finds no reversible error on this point. *Ellis v. Astrue*, No. 7:09-cv-00070-O-BF, 2010 WL 3422872, at *5 (N.D. Tex. July 27, 2010).

Second, the undersigned finds that Graves was afforded the opportunity to correct deficiencies in the ALJ's question. Although Graves argues in his brief that the ALJ's hypothetical question was vague, his attorney failed to raise this argument during the hearing. *Bordelon v. Astrue*, 281 F. App'x 418, 423, n.7 (5th Cir. 2008) (internal quotation mark omitted); *see* Tr. 71–74. For this additional reason, Graves's challenge to the ALJ's hypothetical question to the VE is unfounded, and reversal on this basis is not required.

### C. The ALJ erred by failing to resolve the apparent conflict in VE and DOT evidence, but the error was harmless and does not warrant reversal.

Graves argues that at step five, neither the ALJ nor the Commissioner sufficiently established the existence of work in significant numbers that Graves could perform. *See* ECF No. 14 at 9. At step five, the Commissioner must show "that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). In cases in which the ALJ cannot rely on the Medical-Vocational Guidelines to determine disability, "the ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citation omitted).

The Social Security Administration has issued guidance regarding standards to be followed by ALJs in relying on VE evidence. *See* Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at

*1 (Dec. 4, 2000). In particular, the guidance emphasizes that before relying on VE evidence to support a disability determination, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT) . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." *Id.* With respect to addressing conflicts in occupational information, SSR 00-4p provides:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

*Id.* at *2.

Courts have interpreted SSR 00-4p as placing on ALJs "an affirmative responsibility to ask about any possible conflict between VE evidence and the DOT" before relying on "VE evidence to support a determination of not disabled." *See Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citations and internal quotation marks omitted). When the VE relies on the DOT to support testimony, it is error for an ALJ to fail to ask the VE whether the testimony is consistent with the DOT. *Id.* However, as pointed out in *Graves*, the claimant bears the burden to show "that he or she was prejudiced by the ALJ's failure." *Id.* at 592–93 (quoting *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)). Unless there is an actual conflict or the claimant demonstrates prejudice, this type of procedural error is "harmless and does not warrant reversal." *See id.* at 593.

Here, the VE relied on the DOT for her testimony, and the ALJ relied on the VE's testimony but did not ask whether the testimony was consistent with the DOT. *See* Tr. 69–74. Graves fails to meet his burden of showing that he was prejudiced by the ALJ's failure to ask the VE this question. *See* ECF Nos. 14, 16. He argues that the jobs the VE recommended—self-service store attendant and cashier II—both require reasoning level 3, a level that conflicts with his RFC limiting him to carrying out only simple tasks. ECF No. 14 at 10. However, he does not establish that a conflict exists or show that the ALJ's failure to resolve the apparent conflict prejudiced him. *See* ECF Nos. 14, 16. Therefore, the error is harmless.

Graves further argues that because the VE testified that Graves could work as a cafeteria attendant, but later withdrew his opinion because the job required more than four hours per day of standing and walking, the ALJ erred in relying upon that job as alternative work that Graves could perform. ECF No. 14 at 10; *see* Tr. 31, 71–72. However, the ALJ relied upon two other jobs—self-service store attendant and cashier II—that both exist in significant numbers in the national economy, so it appears that his reliance on the cafeteria attendant position did not prejudice Graves. *See* Tr. 31. Because Graves fails to prove that the ALJ committed prejudicial error, the undersigned does not recommend reversal of the ALJ's finding that Graves could perform jobs that exist in significant numbers in the national economy.

### IV. CONCLUSION

The ALJ properly considered all of Graves's severe impairments in determining his RFC, properly set forth all of his functional limitations and adequately described them to the VE, and did not err in finding that Graves could perform other jobs that exist in significant numbers in the national economy. Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and the Plaintiff has failed to show that reversal of the ALJ's

15

decision is required, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2019) and Fed. R. Civ. P. 72(b)(1) (2019). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on **January 3, 2020**.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE